UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOMER LEE REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15CV00642 AGF |
| | ) | |
| MISSOURI DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Missouri Department of Revenue's motion to dismiss Plaintiff Homer Lee Reed's claims for injunctive relief as moot, and claims for damages as barred by Eleventh Amendment immunity. For the reasons set forth below, the motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiff alleges in his complaint, filed in state court on February 4, 2015, that in September 2013, he petitioned for reinstatement of his driver's license after more than ten years had elapsed since his ten-year license revocation for an alcohol-related offense. On November 7, 2013, the state court ordered Plaintiff's driving privileges reinstated "pursuant to § 302.060(9) RSMo (2012),[1] subject to all reinstatement requirements

---

[1]    Mo. Rev. Stat. § 302.062.2 states, in relevant part:

The ignition interlock device shall further be required to be maintained on all motor vehicles operated by the person for a period of not less than six

including proof of installation of an ignition interlock device ["IID"] . . . ." (Doc. No. 3 at 3.) An IID is a device into which a driver must exhale to activate a vehicle and which will disable the vehicle upon the detection of alcohol.

Plaintiff alleges that he is 72 years old, and had problems blowing with enough force to satisfy the breath volume requirement of the IID due to his chronic obstructive pulmonary disease and asthma. As a result, the IID would not read a passing test and would immobilize his vehicle (regardless of his blood alcohol content). After an initial accommodation, lowering the breath volume requirement for Plaintiff's IID, Plaintiff contacted Defendant regarding his ongoing difficulties using the IID and presented a physician's statement documenting Plaintiff's disabilities, but Defendant refused to meet with Plaintiff to discuss further acceptable accommodations.

On April 15, 2014, Plaintiff filed a charge with the Missouri Human Rights Commission ("MCHR"). By letter dated October 27, 2014, the MHRC stated that it did not have jurisdiction over the matter because Plaintiff was "subject to a court order, this is not a place of public accommodation." (Doc. No. 14-2.) Plaintiff asserts in his complaint that Defendant has discriminated against him, and others similarly situated, by failing to make reasonable accommodation for persons with respiratory disabilities such as his. Count I of the complaint claims violation of Title II of the Americans with

months immediately following the date of reinstatement . . . . If the person fails to maintain such proof with the director, the license shall be suspended for the remainder of the six-month period or until proof as required by this section is filed with the director. Upon the completion of the six-month period, the license shall be shown as reinstated, if the person is otherwise eligible.

Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; Count II claims violation of the provision of the Missouri Human Rights Act ("MHRA") prohibiting disability discrimination in "any place of public accommodation," Mo. Rev. Stat. § 213.065; Count III claims violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and Count IV claims violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. In each count, Plaintiff seeks injunctive relief, as well as damages and attorney's fees and expenses. In Counts II, III, and IV, he also asks for declaratory relief. It is undisputed that Plaintiff was required to use an IID only through June 21, 2014, and that his driver's license is currently valid with no restrictions.

Defendant removed the action to this Court on April 17, 2015, on the basis of federal question jurisdiction. Defendant now moves to dismiss the claims for injunctive relief as moot on the ground that the conduct Plaintiff seeks to enjoin – Defendant's imposition of restricted driving privileges with use of an IID – is no longer imposed on Plaintiff. According to Defendant, Plaintiff can only argue a threat of future harm by proposing that he may once again drive while intoxicated, and be subject again to using an IID; and such a consideration is not a real or immediate threat. Because Plaintiff no longer has standing to assert his own claims for injunctive relief, he cannot bring such claims on behalf of similarly situated citizens with respiratory disabilities.

Defendant next argues that Eleventh Amendment immunity shields it from Plaintiff's claim for damages under the ADA and the RA. Defendant posits that a six-month denial of access to a driver's license does not constitute the denial of a fundamental right protected by the Fourteenth Amendment, and thus the ADA and RA do

not abrogate Defendant's Eleventh Amendment immunity. Defendant also argues that Plaintiff lacks standing to bring claims under the ADA and RA because he was not a "qualified individual" for reinstatement of his license for the six months in question. Rather, Plaintiff failed to meet an essential eligibility requirement – to properly exhale into the IID – and waiving that requirement would not be a reasonable accommodation, but would undermine the statutory scheme altogether.

Defendant argues that Plaintiff has no viable Fourteenth Amendment due process claim because § 302.060.2 bears a rational relationship to the legitimate state interest of keeping individuals from driving on the roads while intoxicated. Defendant maintains that, to the extent Plaintiff is asserting an equal protection claim under the Fourteenth Amendment, such a claim would be subsumed by the ADA and RA claims. Lastly, Defendant argues that Plaintiff has no viable claim under the MHRA because he has not alleged that he was denied "access to the premises of Defendant's office or subject to discrimination on Defendant's premises," and so has not stated a claim for discrimination in "a place of public accommodation" under the MHRA.

Plaintiff responds that his claims for injunctive relief fall under the exception to the mootness doctrine for claims challenging conduct that will likely repeat itself yet evade review. Because the IID is required to be on a vehicle for only six months, and Missouri law allows the MHRC six months to investigate a charge before a discrimination suit may be brought, it would have been impossible, according to Plaintiff, to bring suit while the action was live.

With respect for his claims for damages under the ADA and RA, Plaintiff acknowledges that driving may be a privilege rather than a fundamental right, but contends that the right to be free from discrimination due to disability, "and to be treated equally," is a fundamental right, such that the ADA and RA abrogate Defendant's Eleventh Amendment immunity from these claims in this case. (Doc. No. 14 at 5.) Plaintiff argues that because Defendant refused to meet with him, Defendant cannot claim that accommodations requested are unreasonable, a matter that remains a question of fact. He asserts that he has stated valid Fourteenth Amendment claims, and that the failure of Defendant to block Plaintiff's access to its physical premises is irrelevant to the viability of his claim of disability discrimination under the MHRA.

## DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.*; *Retro Television Network, Inc. v. Luken Comm'cns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

**Claims for Injunctive Relief**

The Court agrees with Defendant that Plaintiff's claims for injunctive relief do not come within the exception to the mootness doctrine for conduct that is capable of repetition, yet evading review. To come within this "narrow exception, the following two elements must exist: (1) there must be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration too short to be fully litigated before becoming moot." *Iowa Protection & Advocacy Servs. v. Tanager, Inc*., 427 F.3d 541, 544 (8th Cir. 2005); *see also Randolph v. Rodgers,* 170 F.3d 850, 856 n.7 (8th Cir. 1999) (characterizing the exception as "extraordinary and narrow").

Here, although the second element would appear to be met, the Court cannot say that there is a reasonable expectation that Plaintiff will again be required to install an IID on his car. *See, e.g*., *United States v. Soboroff*, 534 F. App'x 571, 572 (8th Cir. 2013) (affirming the district court's denial of an injunction requiring a jail to make dietary accommodations for an inmate as moot, because the inmate had been transferred to another facility and was not likely to again be subject to the conditions of the same jail); *Baccam v. Ferguson*, Civil No. 11–5025, 2014 WL 320425, at *4 (W.D. Ark. Jan. 29, 2014) (holding that the plaintiff's motion for an injunction requiring a prison to provide better access to handicapped-accessible showers, was moot, as the plaintiff was no longer incarcerated and made no showing that he was likely to be re-convicted and again be subject to the same conditions). Thus, Defendant's motion to dismiss shall be granted with respect to Plaintiff's claims for injunctive relief.

<u>**Claims for Damages under the ADA and the RA (and the Fourteenth Amendment)**</u>

Title II of the ADA and § 504 of the RA are "similar in substance" and, with the exception of the RA's federal funding requirement, "cases interpreting either are applicable and interchangeable." *Randolph*, 170 F.3d at 858 (citation omitted). The Court will limit its discussion to Plaintiff's damages claim under Title II of the ADA, noting that it is equally applicable to his damages claim under the RA.

Title II of the ADA prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public services, programs, or activities. 42 U.S.C. § 12131(1). The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices . . . meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id*. § 12131(2). The Act authorizes private citizens to bring suits for money damages.

Moreover, the Act provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." *Id*. § 12202. In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that this abrogation of sovereign immunity is valid "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *Id*. at 159. In that case, an inmate claimed that the conditions of his incarceration

violated not only the ADA, but also his Eighth Amendment right to be free from cruel and unusual punishment (a right made applicable to the states by the due process clause of the Fourteenth Amendment). But since the inmates claims still had to be fleshed out in the district court, the Supreme Court remanded the case to the district court to determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

The Court does not believe that this assessment can be made at this stage in the proceedings, on a motion to dismiss. In *Klingler v. Director, Department of Revenue, State of Missouri*, 455 F.3d 888 (8th Cir. 2006), the Eighth Circuit Court of Appeals explained that it could engage in such an analysis, without remanding the case for the district court to do so, because the appellate court had before it "an extensive record created for summary judgment." *Id.* at 892. Here, however, the Court cannot say that, for example, as a matter of law, the accommodation Plaintiff seeks is unreasonable, as Defendant urges. The Court agrees with the following analysis of another district court addressing the same issue under an analogous statute of another state:

> Defendants argue that any accommodation in variance of the statutory requirement of an interlock device would defeat the purpose of the requirement, and that plaintiff is essentially asking to be treated better than those without disabilities. As defendants note, however, the purpose is to ensure that a person does not drive while under the influence of alcohol or drugs, and the Court cannot say as a matter of law, at this stage of the litigation, that there is no way for [defendant] to accommodate plaintiff's

8

disability with some other means of allowing plaintiff to drive after some verification of his sobriety.

*McCray v. Kan., Dep't of Revenue*, No. 12-2188-JWL, 2012 WL 3758667, at *4 (D. Kan. Aug. 30, 2012). Nor can the Court assess an equal protection claim, based on the record now before it. In sum, Defendant's motion to dismiss is denied with respect to Plaintiff's federal claims for damages.

## Claim for Damages under the MHRA

The MHRA prohibits disability discrimination in "any place of public accommodation," as follows:

> All persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation on the grounds of . . . disability.
>
> It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section . . . on the grounds of . . . disability.

Mo. Rev. Stat. § 213.065.1 & .2.

Section 213.010 defines "Places of public accommodation" as "all places . . . offering or holding out to the general public . . . services [or] privileges . . . for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement . . . ." § 213.010(15). The non-exclusive examples that follow include inns, hotels, restaurants, theaters, as well as "[a]ny public facility owned, operated, or managed by or on behalf of this state or any agency or

subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds." *Id.* § 213.010(15)(e). The statute does not define "public facility."

"The MHRA's prohibition against discrimination serves a remedial purpose: it is designed to be conducive to public welfare and the public good. As such, it must be interpreted 'liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case.'" *State ex rel. Washington Univ. v. Richardson*, 396 S.W.3d 387, 392-93 (Mo. Ct. App. 2013) (quoting *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.,* 372 S.W.3d 43, 48 (Mo. Ct. App. 2012).

Although Plaintiff has not cited, nor has the Court found any cases directly on point, the Court concludes that the public roads and highways of the state constitute a "public facility owned, operated, or managed by or on behalf of this state or any agency . . . thereof" under § 213.010(15)(e). Although as noted above, "public facility" is not defined by the MHRA, another Missouri statute defines "public facility" as "any public institution, public facility, public equipment, *or any physical asset* owned, leased, or controlled by this state or any agency or political subdivisions thereof." Mo. Rev. Stat. § 188.200(2) (emphasis added).

In addition, Missouri courts recognize that although dictionary definitions are not the final source of guidance in statutory interpretation, a dictionary "is often a useful tool in determining the ordinary meaning of statutory language." *State v. Payne*, 250 S.W.3d 815, 820 (Mo. Ct. App. 2008); *see also Richardson*, 396 S.W.3d at 393 (turning to Black's Law Dictionary for definition of "holding out" in phrase "holding out

[priveleges] to the general public," in determining that a private university was a place of public accommodation under the MHRA. Looking to such definition, the Court notes http://definitions.uslegal.com/p/public-facility/ which states as follows: "Generally speaking public facility can be any facility, including, but not limited to, buildings, property, recreation areas, and roads, which are owned, leased, or otherwise operated, or funded by a governmental body or public entity."

Given the remedial purpose of the MHRA, and the meaning of the term "public facility," as gleaned from another Missouri statute and general usage, the Court concludes that the state roads and highways of Missouri are places of public accommodation under the MHRA. *Cf. Coleman v. Carnahan*, 312 .W.3d 377 (Mo. Ct. App. 2010) (holding that state securities laws did not constitute a "place of public accommodation," to encompass an investment advisor's claim that state officers' racially motivated investigation denied the advisor use of a public accommodation in violation of the MHRA).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED** with respect to Plaintiff's claims for injunctive relief and **DENIED** with respect to his state and federal claims for damages. (Doc. No. 6.)


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRCIT JUDGE

Dated this 7th day of July, 2015.

11